[Cite as *Mangelluzzi v. Morley*, 2015-Ohio-3143.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   102272

# WILLIAM MANGELLUZZI, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# THOMAS MORLEY, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No.   CV-13-819160

**BEFORE:**   Boyle, J., Jones, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   August 6, 2015

**ATTORNEYS FOR APPELLANTS**

Timothy L.   McGarry
Brendan Mewhinney
Henderson & Schmidlin Co., L.P.A.
840 Brainard Road
Highland Heights, Ohio 44143

Raymond J.   Schmidlin
Dyson, Schmidlin & Foulds Co., L.P.A.
5843 Mayfield Road
Mayfield Heights, Ohio 44124

**ATTORNEYS FOR APPELLEES**

Samuel G.   Casolari, Jr.
Beau D.   Hollowell
Marshall, Dennehey, Warner, Coleman & Goggin
127 Public Square
Suite 3510
Cleveland, Ohio 44114

Matthew Hamm
312 Elm Street
Suite 1850
Cincinnati, Ohio 45202

MARY J. BOYLE, J.:

{¶1} Plaintiffs-appellants, William, Laurie, and Johnathan Mangelluzzi, ("the Mangelluzzis"), appeal from the trial court's decision, granting judgment on the pleadings in favor of defendants-appellees, Thomas and Katie Morley ("the Morleys"). Finding merit to the appeal, we reverse and remand for further proceedings.

Procedural History and Facts

{¶2} The Mangelluzzis and Morleys reside next door to one another on Timberidge Trail in Gates Mills, Ohio. In December 2013, the Mangelluzzis filed the underlying action, alleging, among other things, the following: (1) the Morleys have made numerous false or harassing complaints to the police and various other government officials and agencies during and after the construction of the Mangelluzzis' home, resulting in the Mangelluzzis incurring additional costs; (2) the Morleys have made false and derogatory statements to others about the Mangelluzzis and their family; (3) the Morleys have on numerous occasions invaded the Mangelluzzis' privacy by videotaping and photographing them, including when they were in their own backyard; (4) the Morleys have interfered with the Mangelluzzis' legitimate use of their property; (5) the Morleys' conduct has caused the Mangelluzzis severe emotional distress resulting in medical treatment; and (6) the Morleys "have at all relevant times acted with malice to cause [the Mangelluzzis] not to build their home, and/or to cause them to leave their home." The Mangelluzzis identified approximately 85 to 90 calls made by the Morleys

to the police and an additional 40 to 50 complaints lodged to the city's building department and outside engineer. They further alleged an unspecified number of false complaints the Morleys made to several other government agencies, such as the EPA, the Gates Mills Conservancy, the Cuyahoga County Board of Health, and the Gates Mills City Council.

{¶3} The complaint asserted the following five counts: (1) intentional infliction of emotional distress, (2) invasion of privacy — seclusion and solitude, (3) invasion of privacy — false light, (4) defamation, and (5) civil conspiracy.

{¶4} After answering the complaint and asserting 29 affirmative defenses, the Morleys moved for judgment on the pleadings under Civ.R. 12(C), arguing that they were entitled to judgment as a matter of law based on the allegations of the complaint. The trial court agreed and granted their motion. From that order, the Mangelluzzis now appeal.

## Judgment on the Pleadings

{¶5} In their sole assignment of error, the Mangelluzzis argue that "[t]he trial court erred by granting defendants' motion for judgment on the pleadings."

*A. Standard of Review and Standard for Pleading*

{¶6} We review an order granting judgment on the pleadings de novo, applying the same standard of review the trial court used. *Vinicky v. Pristas*, 163 Ohio App.3d 508, 2005-Ohio-5196, 839 N.E.2d 88, ¶ 3 (8th Dist.).

**{¶7}** A Civ.R. 12(C) motion presents questions of law only, and a determination of the motion is restricted solely to the allegations in the pleadings and any writings attached to the pleadings. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973). "Essentially, the motion is a Civ.R. 12(B) motion to dismiss for failure to state a claim on which relief may be granted, but filed after the pleadings are closed." *Steinbrink v. Greenon Local School Dist.*, 2d Dist. Clark No. 11CA0050, 2012-Ohio-1438, ¶ 13.

**{¶8}** "Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 664 N.E.2d 931 (1996). Thus,

> pursuant to Civ.R. 12(C), "dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief."

Citations omitted. *Vinicky* at ¶ 3.

**{¶9}** "Unlike a Civ.R. 56 motion for summary judgment, which authorizes the court to evaluate evidentiary materials, Civ.R. 12(C) imposes a structural test: whether on their face the pleadings foreclose the relief requested." *Steinbrink* at ¶ 15. For example, if a statute of limitations defense is pleaded and the pleadings unequivocally demonstrate that the action was commenced after the limitations period expired, Civ.R. 12(C) relief is appropriate. *Id.*

{¶10} Both parties confuse the applicable standard for a Civ.R. 12(C) motion and Ohio's pleading requirements. The Mangelluzzis erroneously argue that we are limited to considering only the allegations in the complaint and may not consider the Morleys' answer. But Civ.R. 12(C) specifically authorizes the consideration of the pleadings, which includes both the complaint and answer. If a factual dispute exists that is material to the resolution of the claim, however, then the moving party is not entitled to judgment on Civ.R. 12(C).

{¶11} The Morleys likewise erroneously argued in support of their motion for judgment on the pleadings that the federal court's heightened pleading standard as stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), applies to the Mangelluzzis' complaint. But this court has expressly rejected this claim, noting that "until the Ohio Supreme Court adopts a new pleading standard or the Ohio Rules of Civil Procedure are changed, Ohio remains a notice-pleading state." *Tuleta v. Med. Mut. of Ohio*, 8th Dist. Cuyahoga No. 100050, 2014-Ohio-396, ¶ 31.

{¶12} Ohio follows the "no set of facts" pleading standard, recognizing that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As explained by the Ohio Supreme Court:

> [A] plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not

obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence. Consequently, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.

*York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

{¶13} Under the Ohio Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the party is entitled to relief." Civ.R. 8(A)(1). Civ.R. 8(E) further directs that averments contained in a pleading be simple, concise, and direct. Because Civ.R. 8 clearly establishes that Ohio is a notice-pleading state, "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29. As such, in reviewing a motion for judgment on the pleadings, a complainant's failure to allege specific facts to disprove possible affirmative defenses of the defendant should not be fatal to the complaint. *Kerr v. Logan Elm School Dist.*, 4th Dist. Pickaway No. 14CA6, 2014-Ohio-5838, ¶ 13 ("holding that the [requirement that plaintiffs] had to specifically allege facts to disprove the affirmative defense of recreational-user immunity contravenes the Rules of Civil Procedure").[1]

---

[1] We recognize that, "in a few carefully circumscribed cases," the Ohio Supreme Court has modified the standard for granting a motion to dismiss [or a motion for judgment on the pleadings] by requiring that the plaintiff plead operative facts with particularity. *See State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.,* 72 Ohio St.3d 106, 109-110, 647 N.E.2d 799 (1995), quoting *York*, 60 Ohio St.3d at 145, 573 N.E.2d 1063, and citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 532 N.E.2d 753 (1988) (employee's intentional tort claim against employer), and *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584

**{¶14}** With these governing standards in mind, we analyze each of the claims asserted in the complaint.

### B. Invasion of Privacy: Intrusion upon Seclusion

**{¶15}** A claim for intrusion upon seclusion is defined as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

*Sustin v. Fee*, 69 Ohio St.2d 143, 431 N.E.2d 992 (1982) (quoting Restatement of the Law 2d, Torts, Section 652B (1977)); *see also Rothstein v. Montefiore Home*, 116 Ohio App.3d 775, 689 N.E.2d 108 (8th Dist.1996).

**{¶16}** Relevant to this claim, the Mangelluzzis allege that the Morleys have invaded their privacy by videotaping and photographing them on numerous occasions while they "are in their own backyard." They further allege that, despite the Mangelluzzis installing "an additional $10,000 worth of fencing to stop defendants from videotaping" the Mangelluzzis' children, "[d]efendants have responded by climbing to the top of their children's swing sets in order to continue to videotape them." They argue that there is no blanket rule of law that precludes an invasion of privacy claim when the viewing occurs outside of the home. They further argue that the Morleys have

---

(1991) (negligent hiring claim against religious institution); *see also* S.Ct.Prac.R. 12.02(B)(1) (requiring complaints in original actions filed in the Supreme Court to contain a "specific statement of facts upon which the claim for relief is based"); Civ.R. 9(B) (requiring for claims of fraud or mistake that "the circumstances constituting fraud or mistake shall be stated with particularity"). However, none of the exceptions to the general rule of notice pleading apply in

improperly characterized their claim as involving activity "visible from the street by a passerby." We agree.

{¶17} The Morleys moved for judgment on this claim, arguing that "there is not a single allegation that the Morleys invaded any private place of the plaintiffs." The Morleys further argued that "plaintiffs' allegations of sightings in their yard do not state a legally recognized claim" and that they "are entitled to a qualified privilege to inspect publicly visible areas since their actions relate to complaints to various government entities." On appeal, the Morleys essentially maintain that allegations of photographing or videotaping individuals in their backyard cannot support an invasion of privacy claim because a person's backyard is not "private" and that the "qualified privilege" defense entitles them to judgment on the pleadings. These arguments, however, lack merit.

{¶18} First, the cases that the Morleys rely upon all involve judgments rendered beyond the pleadings stage and after the record was developed. The decisions rely on the specific, factual circumstances of each case and none stand for the bright-line rule that an intrusion upon seclusion claim fails as a matter of law when the intrusion occurs while the plaintiffs are in their backyard.

{¶19} Second, the Morleys' arguments also hinge on an inaccurate inference, namely, that the plaintiffs "could be seen from the street or by anyone driving by the house and yard." But the complaint does not support this inference; instead, the complaint belies this claim. Indeed, the complaint alleges that the Mangelluzzis erected

---

this case.

a fence to stop the Morleys from interfering and invading their privacy, yet the Morleys continued to do so and took such measures as climbing on their children's swing set to videotape the Mangelluzzis' children. Construing these allegations in the Mangelluzzis' favor, as we are required to do, they reasonably imply that the plaintiffs were not visible from the street or to the public when they were in their backyard during the alleged invasions of privacy.

{¶20} Finally, we cannot say that the pleadings demonstrate that the Morleys are unequivocally entitled to a "qualified privilege" to defeat the Mangelluzzis' claim. For this same reason, we find the Morleys' reliance on the Twelfth District's decision in *Blevins v. Sorrell*, 68 Ohio App.3d 665, 589 N.E.2d 438 (12th Dist.1990), to be misplaced.

{¶21} In *Blevins*, the defendants, who suspected the plaintiff of illegally operating a business out of his home, engaged in a surveillance scheme, which included placing a platform ladder in a tree to gain a better vantage point after the plaintiff erected a privacy fence. The case proceeded to a bench trial where the trial court ultimately found in favor of the defendants on plaintiff's invasion of privacy claim, stating that the defendants had "a qualified privilege to inspect the otherwise publicly visible activities of [plaintiff] to attempt to ascertain whether or not he was in fact violating the local zoning ordinance." *Id.* at 670. The court concluded that "none of defendants' conduct was done with malice or fraud," nor was the conduct "done in bad faith or in reckless disregard for plaintiffs' rights." *Id.*

**{¶22}** Unlike *Blevins*, we are not reviewing a verdict on an invasion of privacy claim where the defendants presented evidence in support of their qualified privilege defense and where the court specifically found that there was no malice. Notably, while the Morleys argue that they "are entitled to a qualified privilege to inspect publicly visible areas since their actions relate to complaints to various government entities," the Mangelluzzis' complaint refutes this claim. Instead, they allege that the Morleys acted with actual malice and for no other purpose than "to cause the Mangelluzzis not to build their home or to leave their home." Here, we find that the pleadings simply do not support the Morleys' assertion that they are entitled to judgment as a matter of law on the intrusion upon seclusion claim.

*C. Defamation*

**{¶23}** Defamation occurs when a publication contains a false statement "'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

**{¶24}** Thus, to establish a claim for defamation, a plaintiff must show: (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the

publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77.

{¶25} The Mangelluzzis argue that they satisfied their pleading requirements to defeat a motion for judgment on the pleadings. They point to the following paragraphs of their complaint in support of the claim:

> 11. Additionally, Defendants repeatedly made many of the same false complaints to the building department, as well as Gates Mills' outside contracted engineer. Defendants made a number of other false claims, including:
>
> · The Mangelluzzis were "flooding" their property;
> · The Mangelluzzis were causing erosion and polluting their water;
> · That the Mangelluzzis were cutting down trees outside of their site plan; and
> · That the Mangelluzzis were performing work outside of the scope of their building permit;
>
> * * *
>
> 15. Defendants also made false complaints to the EPA regarding the construction. As a result, the Mangelluzzis incurred an additional $7,500 for their own engineer. The Mangelluzzis would not have had to pay for these additional engineering costs except for Defendants' false complaints.
>
> * * *
>
> 19. Defendants have on numerous occasions made false and derogatory statements to others about the Plaintiffs and their family, including:
>
> · The Mangelluzzis damaged the environment by cutting down trees and polluting streams;
> · The Mangelluzzis do not know how to construct a home;
> ·The Mangelluzzis do not belong in Gates Mills; and

· The Mangelluzzis' children are not welcome in Gates Mills.

**{¶26}** The Mangelluzzis further contend that the Morleys' claim of a qualified privilege has no merit because the statements were made with "reckless disregard to the truth or falsity." The Mangelluzzis also argue that the statements cannot be construed as opinions or interpreted in a favorable light.

**{¶27}** Conversely, the Morleys maintain that the statements at issue "were made to governmental entities and limited to information upon which they could respond," thereby invoking a public interest privilege. As for the statements made to "others," the Morleys argue that the Mangelluzzis failed to "identify the recipient with the specificity required to support a viable claim." They additionally argue that statements constitute unverifiable opinions that are not defamatory.

*1. Qualified Privilege*

**{¶28}** "A person alleged to have published defamatory material may invoke the defense of qualified privilege in order to avoid liability." *Bell v. Horton*, 4th Dist. Ross No. 02CA2651, 2002-Ohio-7260, ¶ 9. The Ohio Supreme Court has explained the privilege as follows: "A publication is privileged when it is 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.'" *A & B-Abell Elevator Co.*, 73 Ohio St.3d at 7, 651 N.E.2d 1283. The essential elements to establish the privilege are "'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" *Hahn*

*v. Kotten*, 43 Ohio St.2d 237, 246, 331 N.E.2d 713 (1975), quoting 33 American Jurisprudence, Libel and Slander, Section 126, at 124-125 (1941).

{¶29} "Once the defense of qualified privilege attaches, the plaintiff can only defeat the privilege by a clear and convincing showing that the defendant made the communication with actual malice." *Bell* at ¶ 10. The issue of malice, however, does not arise unless the privilege is first found to exist. *Id.* Actual malice is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. *Id.*, citing *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991), paragraph two of the syllabus.

{¶30} The Morleys rely on *Bell* as controlling authority in support of their qualified privilege defense. In *Bell*, the plaintiff, who was superintendent of a regional sewer district, alleged the defendants defamed him by writing a letter and making various telephone calls to the Environmental Protection Agency (EPA), stating that plaintiff falsified reports to the EPA and failed to perform his official duties. Plaintiff further alleged that the defendants made other defamatory statements at various county board meetings, stating that plaintiff "tore up" township roads and changed the flow of water when he built apartments on his private property; that plaintiff abused his public office by using the sewer district's equipment when he built his apartments; and that he worked on his apartments during the day, when he was supposed to be managing the sewer district. The trial court granted the defendants' motion for summary judgment, which argued that the alleged defamatory statements were protected under a qualified privilege. The court

of appeals affirmed, agreeing that the statements were entitled to a qualified privilege and that the plaintiff failed to "present some evidence that created an issue of fact about the existence of actual malice on the defendants' part." *Id.* at ¶ 13.

**{¶31}** *Bell* is distinguishable from the instant case because we are reviewing a judgment on the pleadings — not a motion for summary judgment. Here, even assuming that a qualified privilege attached to the communications published to the governmental entities identified in the complaint, the complaint pled that the Morleys acted with "malice." *See Bell,* 4th Dist. Ross No. 02CA2651, 2002-Ohio-7260*,* at ¶ 10 (malice defeats the affirmative defense of qualified privilege); *see also Denlinger v. Columbus, Ohio Pub. Schools*, 10th Dist. Franklin No. 00AP-315, 2000 Ohio App. LEXIS 5679 (Dec. 7, 2000) (allegations that defendants made their defamatory statements with knowledge of their falsity, or with reckless disregard as to their truth or falsity defeats the application of qualified privilege at the pleadings stage).

**{¶32}** We find that this allegation is further supported in the pleadings by additional allegations that paint a picture of the Morleys repeatedly lodging false complaints and asserting false statements in their crusade to deter the Mangelluzzis from constructing their home and from remaining in Gates Mills. Notably, whether the Mangelluzzis can actually prove these allegations is not the question at this stage in the proceedings.

**{¶33}** We further note that the Mangelluzzis have alleged that these statements were made to "others." Contrary to the Morleys' assertion, the failure to specifically

identify the "others" by name is not fatal under Ohio's general-notice pleading standards. The statements made to "others" therefore would not implicate any "qualified privilege" defense because it is not apparent from the pleadings the circumstances of the communication. *See Bell* at ¶ 11 ("to determine whether the defamatory statements are entitled to a qualified privilege, courts consider the circumstances under which they were made"). Additionally, interpreting the allegation in its context in the complaint, the reasonable inference is that the communication to "others" was directed to individuals not associated with a governmental entity.

{¶34} Accordingly, construing the allegations in a light most favorable to the Mangelluzzis and adhering to Ohio's general-notice pleading standard, the Morleys cannot rely on "qualified privilege" to defeat the defamation claim in a motion for judgment on the pleadings.

*2. Opinion*

{¶35} The Morleys contend that the alleged defamatory statements cannot support a claim for defamation because they are mere opinions. Specifically, they contend that the statements are not verifiable facts.

{¶36} The expression of an opinion is generally immune from liability under the Ohio Constitution and United States Constitution. *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280, 649 N.E.2d 182 (1995). "This is because 'there is no such thing as a false idea.'" *Lograsso v. Frey*, 8th Dist. Cuyahoga No. 100104,

2014-Ohio-2054, ¶ 30, quoting *Gertz v. Robert Welch*, *Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

{¶37} The determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court. *Scott v. News- Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986). To answer this question, a court must determine whether a reasonable reader or hearer will perceive the statement as a fact or opinion. *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 144, 729 N.E.2d 364 (2000). "The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." *Id.* at 145.

{¶38} When determining whether speech is protected opinion, Ohio courts apply a totality of the circumstances analysis and consider the following four factors: (1) the specific language at issue, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. *Scott* at 250. The application of this test is "fluid," and the weight given to any one factor will necessarily vary depending on the circumstances of each case. *Id.*

{¶39} We agree that some of the statements identified in the complaint clearly constitute unverifiable opinions, such as the Mangelluzzis "do not belong in Gates Mills" or they "are not welcome in Gates Mills." As for the communications indicating that the Mangelluzzis engaged in unlawful conduct, we find that the record is not fully developed to ascertain whether such statements are defamatory fact or protected opinion. Indeed, the totality of the circumstances four-part test requires more than just a determination if

the statement is verifiable — the court must engage in an analysis of the general context of the statement, and the broader context in which the statement appeared. *Vail,* 72 Ohio St.3d at 282, 649 N.E.2d 182. We find that the face of the pleadings do not establish as a matter of law that all of the statements identified in the complaint are protected opinions.

### 3. *Innocent Construction*

**{¶40}** The Mangelluzzis further argue that the innocent construction rule does not entitle the Morleys to judgment on the pleadings. We agree.

**{¶41}** The "innocent construction rule" provides: "If allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983); *see also Van Deusen v. Baldwin*, 99 Ohio App.3d 416, 419, 650 N.E.2d 963 (9th Dist.1994). Thus, "[i]f a statement has more than one interpretation, it cannot be defamatory per se." *Murray v. Knight-Ridder, Inc.*, 7th Dist. Belmont No. 02 BE 45, 2004-Ohio-821, ¶ 31.

**{¶42}** The Morleys fail to demonstrate how the alleged defamatory statements can be construed innocently. And without further specific information regarding the context of these statements, we cannot say that the innocent construction rule applies from the pleadings alone.

**{¶43}** Accordingly, based on the face of the pleadings alone, we cannot say that the Morleys' affirmative defenses of qualified privilege, protected opinion, or the

innocent-construction rule unequivocally apply to the Mangelluzzis' claim for defamation.

### D. *Invasion of Privacy: False Light*

**{¶44}** In 2007, the Ohio Supreme Court recognized the tort of false-light invasion of privacy and adopted Restatement of the Law 2d, Torts, Section 652E. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, syllabus. A claim for false light is summarized as follows:

> In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter, and the false light in which the other would be placed.

*Id.*

**{¶45}** The false light relates to publicity that would be highly offensive to a reasonable person. *Id.* at 472. "'In other words, it applies only when the defendant knows that the plaintiff, as a reasonable [person], would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.'" *Id.*, quoting Restatement of the Law, 2d, Torts, Section 652E, Comment c. The critical inquiry is the nature of the statement; a plaintiff's privacy is not invaded when "unimportant" false statements are made. It is only when there is such a "major misrepresentation" of the

plaintiffs' character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in such position. *Id.*

{¶46} Upon review, we find that the Mangelluzzis satisfied their general notice pleading for purpose of an invasion of privacy — false-light claim. Allegations of the Morleys knowingly making false statements to various organizations, agencies, and other members of the public, including at Gates Mills city council meetings, such as the Mangelluzzis "damaging the environment by cutting down trees and polluting streams," support the Mangelluzzis' claim for false light. These alleged knowingly false statements paint the Mangelluzzis in a false light to the community of Gates Mills.

{¶47} And for the reasons stated above, we likewise find that the affirmative defenses of qualified privilege, protected opinion, and innocent-construction rule do not entitle the Morleys to judgment as a matter of law at the pleadings stage.

*E. Intentional Infliction of Emotional Distress*

{¶48} In order to prove intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt. Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). In defining "extreme and outrageous" conduct, the Supreme Court of Ohio adopted the definition provided in the Restatement of Torts 2d and stated that liability has been found only where the conduct has been so outrageous that it goes beyond all possible bounds of decency and is

so atrocious that it is "utterly intolerable in a civilized society." *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153, 462 N.E.2d 392 (1984).

{¶49} "Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform." *Morrow v. Reminger & Reminger Co. L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 49 (10th Dist.), citing *Sears Roebuck,* 7th Dist. Jefferson No. 02 JE 8, 2002-Ohio-7183.

{¶50} In support of this claim, the Mangelluzzis allege that (1) the Morleys made over 100 false complaints to various governmental entities, including the police department, all as a means to harass them; (2) the Morleys made knowingly false statements to others; (3) the Morleys videotaped and photographed them; and (4) the Morleys intentionally interfered with the Mangelluzzis' use of their property and residence. They contend that these allegations are sufficient to state a claim.

{¶51} The Morleys contend, however, that the allegations of the complaint fail to allege a claim because the Mangelluzzis have not pled facts that demonstrate "extreme and outrageous conduct." Specifically, they argue that the underlying conduct supporting the claim consists of actions they were legally entitled to perform, e.g., reporting complaints to government entities, even if false.

{¶52} Although Ohio courts have recognized that a party's conduct, even if premised on bad faith, does not amount to "extreme and outrageous conduct" to satisfy a claim when the conduct involves a legally sanctioned act, we find the pleadings reveal

more than just the defendants exercising their right to lodge complaints. *See Swaykus*, 7th Dist. Jefferson No. 02 JE 8, 2002-Ohio-7183 (emotional distress claim based solely upon party's filing of the underlying suit is insufficient as a matter of law; filing the complaint is a recognized legal right). Thus, while the Morleys have a right to complain to government entities, the complaint depicts a scheme involving the lodging of over 100 false complaints for the purpose of deterring the Mangelluzzis from constructing their home or from staying in Gates Mills. This conduct coupled with an on-going harassment scheme, which included videotaping the Mangelluzzis and alleging defamatory statements, is sufficient to satisfy the threshold requirement of "extreme and outrageous" conduct.

{¶53} We find, therefore, that the trial court erred as a matter of law in finding that the Mangelluzzis failed to allege an intentional infliction of emotional distress claim.

*F. Civil Conspiracy*

{¶54} Civil conspiracy has been defined as a "malicious combination of two or more persons to injure another, in person or property, in a way not competent for one alone." *Minarik v. Nagy*, 8 Ohio App.2d 194, 196, 193 N.E.2d 280 (8th Dist.1963). Thus, the elements that comprise a claim of civil conspiracy are (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Laughner v. Laughner*, 8th Dist. Cuyahoga No. 56491, 1990 Ohio App. LEXIS 151 (Jan. 25, 1990). Thus, an action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed.

(Citations omitted.)  *O'Brien v. Olmsted Falls*, 8th Dist. Cuyahoga Nos. 89966 and 90336, 2008-Ohio-2658, ¶ 41.

**{¶55}** We find that the Mangelluzzis have sufficiently satisfied Civ.R. 8 in pleading a civil conspiracy claim.   In the complaint, they alleged that Thomas and Katie Morley maliciously conspired and acted with the intent of depriving the Mangelluzzis of their right to privacy, intending to cause them emotional distress, and intending damage to their reputations in the community.   Based on the specific instances of misconduct identified in the complaint, we can reasonably infer that the Morleys conspired together in committing the alleged torts.   Additionally, having already found that the other torts survive the pleadings stage, an independent act exists to support the claim.

## Conclusion

**{¶56}** Applying the appropriate standard to the Morleys' Civ.R. 12(C) motion for judgment on the pleadings, we sustain the Mangelluzzis' sole assignment of error.   We find that the trial court erred in concluding as a matter of law that the Mangelluzzis failed to state a claim for which relief can be granted and that the Morleys are entitled to judgment as a matter of law.   We note, however, that our holding should not be construed as commenting on the merits of the Morleys' affirmative defenses after the facts are fully developed and analyzed.

**{¶57}** Judgment reversed and case remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the    Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

LARRY A.    JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR