[Cite as *Holmes v. Cuyahoga Community College*, 2021-Ohio-687.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KEITH HOLMES,                                    :

     Plaintiff-Appellee,              :

                            No. 109548

            v.                                    :

CUYAHOGA COMMUNITY COLLEGE,      :
     ET AL.,

                                  :

     Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  March 11, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-903076

---

### *Appearances:*

Caryn Groedel & Associates Co., L.P.A., Caryn M. Groedel, and
Matthew Grimsley, *for appellee*.

Giffen & Kaminski L.L.C., Karen Giffen, Kerin Lyn Kaminski,
and Kristen M. Cavin, *for appellants*.

---

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellants Cuyahoga Community College ("Tri-C") and Clayton

Harris, the head of Tri-C's Campus Police and Security Services Department, appeal

from the trial court's decision denying their motion for judgment on the pleadings

as to Harris regarding a complaint filed by Keith Holmes, a former employee of the campus police department. In the complaint, Holmes, who is white, claimed reverse racial discrimination, harassment, and retaliation against appellants. Harris claimed immunity pursuant to R.C. Chapter 2744 and sought a dismissal of the complaint against him. Applying the applicable standard of review for a Civ.R. 12(C) motion for judgment on the pleadings, we affirm the decision of the trial court.

**The Complaint**

{¶ 2} On August 31, 2018, Holmes,[1] a former police officer employed by Tri-C, filed a complaint against defendants Tri-C and Clayton Harris ("defendants" or "appellants" hereafter). Holmes began his employment with Tri-C in 2014 as a corporal in Tri-C's campus police department, working at the college's Metro Campus under the supervision of Sergeant Jerome Johnson, Lieutenant Ronald Wynne, and Harris, who are all African-American.

{¶ 3} In January 2016, Holmes was transferred to Tri-C's Eastern Campus. Sergeant Thomas McMillan, who is also African-American, became one of his direct supervisors.

{¶ 4} Around that time, there was an open position for a corporal at Tri-C's Westshore Campus. Holmes alleged that he met with Harris and expressed an interest in the position, but Harris dissuaded him from pursuing the position,

---

[1] We note that, in the trial court's record, plaintiff's name was alternatively spelled as "Holms" and "Holmes." It appears that plaintiff's name was misspelled as "Holms" in the caption page of the complaint and subsequently corrected as "Holmes."

stating that he was going to promote Sergeant McMillan to a lieutenant position and planned to place Holmes in McMillan's sergeant position upon McMillan's promotion. Relying on Harris's representation, Holmes decided not to pursue the corporal position at the Westshore campus.

{¶ 5} In July 2016, McMillan was promoted to be a lieutenant, but Harris hired Reginald Eakins, who was a patrol officer at the time and also an African-American, for McMillan's position. Sergeant Eakins then became one of Holmes's supervisors.

{¶ 6} According to Holmes's complaint, Sergeant Eakins engaged in discriminatory actions against him. On October 26, 2016, Eakins issued a Performance Progress Exception ("PPE") against Holmes and placed him on probation for failing to demonstrate that he could "successfully analyze" and manage campus incidents, "fairly and impartially evaluate employees," and "accept responsibility for his actions." Holmes alleged that the issuance of the PPE was supported by Lieutenant McMillan and with acquiescence by Harris. Holmes believed appellants have not disciplined his similarly situated African-American colleagues for these "purely subjective" reasons.

{¶ 7} Holmes also alleged that in November 2016, Eakins verbally counselled him and Officer Antwan Daniels, who is African-American, for failing to document an incident. However, only Holmes's name appeared on Eakins's Notice of Counseling regarding the incident. Office Daniels's name was added to the notice only after Holmes asked Eakins about it.

{¶ 8} Holmes also alleged that he was disciplined by Eakins for failing to utilize LEADS on January 19, 2017, even though two African-American officers admitted that the failure to utilize the system on that day was their fault. While Eakins did not discipline these two officers, Eakins cited the incident as a reason to extend Holmes's probationary PPE status.

{¶ 9} On February 24, 2017, Holmes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). According to Holmes, after he filed the complaint, appellants retaliated against him with heightened discipline, harassment, and unjustified scrutiny of his actions. As examples, he alleged that he was retroactively disciplined on April 7, 2017, for obtaining secondary employment as a Tri-C instructor, even though he had received prior authorization for that employment. He also alleged Eakins falsely accused him of giving a biased evaluation to an African-American subordinate and, on April 12, 2017, further extended his probationary PPE status.

{¶ 10} Finally, Holmes alleged that the defendants hired Stephanie Hall, also an African-American, as Administrative Sergeant without publicly posting the position or giving him an opportunity to apply for the position.

{¶ 11} Holmes asserted that Harris, as head of Tri-C's Campus Police and Security Services Department, was aware of and condoned the race-based discriminatory employment decisions and harassment against him. Holmes claimed that the defendants' actions, including retaliation and race-based

harassment and discrimination, made his work conditions so intolerable that he was compelled to resign on May 30, 2017.

{¶ 12} Holmes claimed three causes of action: race discrimination (Count 1), race harassment (Count 2), and retaliation (Count 3). Under Count 1, Holmes claimed the defendants engaged in race-based discriminatory actions, prohibited by R.C. 4112.02, recklessly, maliciously, and intentionally. He claimed that the defendants are liable for punitive damages because their conduct reflected a conscious disregard for his rights, causing him to suffer substantial damages.

{¶ 13} Under Count 2, Holmes claimed he suffered race-based harassment that created an intimidating and hostile work environment. He claimed the defendants engaged in the harassing conduct recklessly, maliciously, and intentionally. He alleged that Harris was liable for failing to take prompt and effective remedial action to end or prevent the harassment and Tri-C was liable under the doctrine of respondeat superior.

{¶ 14} Under Count 3, Holmes claimed the defendants took retaliatory employment actions against him recklessly, maliciously, and intentionally. He claimed punitive damages were warranted because the defendants' conduct reflected a conscious disregard for his rights, causing him to suffer substantial damages.

{¶ 15} Appellants answered the complaint and asserted several defenses, including the defense of sovereign immunity.

{¶ 16} Thereafter, appellants filed a motion for summary judgment.[2] Holmes also filed a motion for summary judgment. Neither motion has been ruled on by the trial court.

**Defendants' Motion for Judgment on the Pleadings Regarding Harris and Holmes's Opposition**

{¶ 17} Subsequently, appellants filed a motion for judgment on the pleadings as to the claims against Harris on the ground of immunity pursuant to R.C. Chapter 2744. In the motion, they argued Harris is entitled to immunity as a political subdivision employee and the complaint did not allege any exceptions to immunity.

{¶ 18} Holmes opposed the motion. He argued the discriminatory conduct, harassment, and retaliation are intentional torts and, as such, are not barred by R.C. 4123.74.[3] He made additional allegations that Harris required those interested in becoming a sergeant to take an exam, a test that was never required until Holmes applied for the position. In addition, Holmes argued Harris aided and abetted those who committed discriminatory, harassing, and retaliatory acts against him. Holmes also claimed Harris exhibited deliberate indifference to Holmes's report of harassment and discrimination on September 7 and December 16, 2016, in failing to investigate or take any actions to stop the unlawful conduct toward Holmes.

---

[2] Appellants argued in their motion that they are entitled to summary judgment on plaintiff's claims of discrimination, harassment, and retaliation, without arguing a defense based on immunity

[3] R.C. 4123.74 is a statute governing workers' compensation matters. Holmes did not elaborate on the relevancy of R.C. 4123.74 in this case.

**Trial Court's Decision**

{¶ 19} In addition to the motion for judgment on the pleadings, the defendants also filed a motion to strike Holmes's request for punitive damages and attorney fees predicated on political subdivision immunity under R.C. Chapter 2744.

{¶ 20} The case was set for trial on February 24, 2020. Prior to starting trial that day, the trial court and the parties discussed various evidentiary issues and pending motions. After that discussion, the trial court orally denied the defendants' motion for judgment on the pleadings as to Harris and their motion to strike plaintiff's request for punitive damages and attorney fees. The court stated the following:

> So I am not going to grant a judgment on the pleadings with respect to individual liability of the chief, nor with respect to punitive damages, and that should be a determination that the jurors make[.] [I]f there's evidence[,] punitive damage claim will be bifurcated pursuant to statute.

{¶ 21} The defendants immediately filed the instant appeal. Pursuant to App.R. 4(C), this court remanded the matter to the trial court for it to journalize its rulings on the two motions. The trial court subsequently issued a journal entry denying both motions "in accordance with this court's February 24, 2020 oral rulings." Tri-C subsequently amended its notice of appeal to include the trial court's written judgment denying both motions.

{¶ 22} On appeal, appellants present the following assignments of error for our review:

1. As an employee of a political subdivision, Tri-C Chief of Police Clayton Harris ("Chief Harris") is entitled to immunity under R.C. 2744 and the trial court therefore erred in denying Chief Harris' Motion for Judgment on the Pleadings based on his claim of immunity.

2. Punitive damages cannot be awarded against a political subdivision under R.C. 2744 and therefore the trial court erred in denying Tri-C's Motion to Strike Plaintiff's Claims for Punitive Damages and Attorneys' Fees.

**Final Appealable Order**

{¶ 23} Holmes claims the trial court's decision denying appellants' motion for judgment on the pleading is not a final appealable order. This issue has been settled by the Supreme Court of Ohio in *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878. It is undisputed that Tri-C is a political subdivision. *See Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092 (8th Dist.). Pursuant to R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

{¶ 24} In *Hubbell*, a homeowner sued a municipality regarding a sewage backup. The city moved for summary judgment claiming political subdivision immunity. The trial court denied the motion, finding that questions of fact remained as to the city's entitlement to immunity. The court of appeals dismissed the city's appeal for lack of a final, appealable order. The Supreme Court of Ohio reversed, citing R.C. 2744.02(C). That statute provides that "[a]n order that denies a political

subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Interpreting the phrase "the benefit of an alleged immunity," the court explained that the statute is not limited to orders that finally resolve the immunity question, reasoning that "the plain language of R.C. 2744.02(C) does not require a final denial of immunity before the political subdivision has the right to an interlocutory appeal." *Hubbell* at ¶ 12.

{¶ 25} Applying *Hubbell*, this court held in an en banc opinion that denials of motions for judgment on the pleadings or motions to dismiss based on political subdivision immunity are final orders. *DiGiorgio v. Cleveland*, 196 Ohio App.3d 575, 2011-Ohio-5824, 964 N.E.2d 495 (8th Dist.). *See also Schmitt v. Educational Serv. Ctr.*, 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 7 ("trial court orders denying motions for judgment on the pleadings or motions to dismiss where a political subdivision has asserted immunity are final, appealable orders, even where the trial court does not explain the basis for its decision on the immunity issue"). In *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, the Supreme Court of Ohio reaffirmed its interpretation of R.C. 2744.02(C) in *Hubbell* and also cited *DiGiorgio* with approval.

{¶ 26} Our review, however, is limited to the alleged errors in the portion of the trial court's decision that denied the political subdivision the benefit of immunity and we lack jurisdiction to address any other interlocutory rulings the trial court made. *CAC Bldg. Properties, L.L.C. v. Cleveland*, 8th Dist. Cuyahoga No. 91991,

2009-Ohio-1786, ¶ 9, fn. 1; *Owens v. Haynes*, 9th Dist. Summit No. 27027, 2014-Ohio-1503, ¶ 8. Accordingly, we only have jurisdiction in this interlocutory appeal to review the first assignment of error regarding the propriety of the trial court's denial of appellants' motion for judgment on the pleadings.

**Judgment on the Pleadings**

{¶ 27} Civ.R. 12(C) allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial * * *." A motion for judgment on the pleadings pursuant to Civ.R. 12(C) is characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted; therefore, the same standard applies to both motions. *Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 163, 644 N.E.2d 731 (9th Dist.1994). Similar to a Civ.R. 12(B)(6) motion to dismiss, the factual allegations of the complaint are taken as true; however, unsupported legal conclusions are insufficient. *Tate v. Garfield Hts.*, 8th Dist. Cuyahoga No. 99099, 2013-Ohio-2204, ¶ 9.

{¶ 28} The consideration of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the pleadings. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166, 297 N.E.2d 113 (1973).

{¶ 29} Entry of judgment pursuant to Civ.R. 12(C) is only appropriate "'where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.'" *Hester v. Dwivedi*, 89 Ohio

St.3d 575, 577-578, 733 N.E.2d 1161 (2000), quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). A motion for judgment on the pleadings requires a determination that no material factual issues exist and the movant is entitled to judgment as a matter of law. *Burnside v. Leimbach*, 71 Ohio App.3d 399, 402-403, 594 N.E.2d 60 (10th Dist.1991).

{¶ 30} When reviewing a judgment regarding Civ.R. 12(C), we are reminded that the rule "presents an onerous burden for litigants and consequently, a trial court must be circumspect in its analysis of Civ.R. 12(C) motions." *Business Data Sys. v. Figetakis*, 9th Dist. Summit No. 22783, 2006-Ohio-1036, ¶ 10.

{¶ 31} Finally, we review de novo a trial court's decision on a motion for judgment on the pleadings. *Drozeck v. Lawyer Title Ins. Corp.*, 140 Ohio App.3d 816, 820, 749 N.E.2d 775 (8th Dist.2000).

**Liability Pursuant to R.C. 2744.09**

{¶ 32} Holmes argues R.C. 2744.09 applies to impose liability on Harris despite the general grant of immunity under R.C. Chapter 2744. R.C. 2744.09 states as follows:

> This chapter does not apply to, and shall not be construed to apply to, the following:
>
> (A) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;
>
> (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to *any matter that arises out of the employment relationship between the employee and the political subdivision*;

(C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment;

(D) Civil actions by sureties, and the rights of sureties, under fidelity or surety bonds;

(E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions.

(Emphasis added.)

{¶ 33} Specifically, Holmes argues R.C. 2744.09(B) is applicable. Section 2744.09(B) allows political subdivision employees to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744. Under R.C. 2744.09(B), political subdivision immunity does not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]"

{¶ 34} Regarding R.C. 2744.09(B), the Supreme Court of Ohio held that when an employee of a political-subdivision employer brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a "matter that arises out of the employment relationship" within the meaning of R.C. 2744.09(B) and therefore immunity does not apply. *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247.

{¶ 35} Claiming race discrimination, race-based harassment, and retaliation are intentional torts, Holmes argues that political subdivisions and their employees are not immune from claims of intentional torts, citing R.C. 2744.09(B).

{¶ 36} Regardless of whether Holmes's claims of employment discrimination are claims of intentional torts,[4] the Supreme Court of Ohio has held that R.C. 2744.09 (B) only removes the immunity of a political subdivision but does not remove immunity from the employees of political subdivisions. *Zumwalde v. Madeira & Indian Hill Joint Fire, Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 27 ("In a civil action brought by an employee of a political subdivision against another employee of the political subdivision arising out of the employment relationship, R.C. 2744.09(B) removes immunity only as to the political subdivision and does not affect the statutory immunity of the fellow employee."). *See also Spitulski v. Bd. of Edn. of the Toledo City School Dist.*, 2017-Ohio-2692, 90 N.E.3d 287, ¶ 35 (6th Dist.), and *Kravetz v. Streetsboro Bd. of Edn.*, 11th Dist. Portage No. 2011-P-0025, 2012-Ohio-1455, ¶ 32. Holmes's claim that Harris is without the protection of immunity pursuant to R.C. 2744.09 (B) is without merit.[5]

{¶ 37} While *Zumwalde* clarified that R.C. 2744.09 removes a political subdivision's immunity for claims arising out of the employment relationship but

---

[4] "[E]mployment discrimination claims are not employer intentional torts." *Ogilbee v. Bd. of Edn. of Dayton Pub. Schools*, 2d Dist. Montgomery No. 23432, 2010-Ohio-1913, ¶ 18.

[5] Holmes's claim that Harris is not afforded immunity pursuant to R.C. 2744.09(C) is similarly without merit because that statute also applies to "a political subdivision" on its face.

does not do so for individual employees, *Zumwalde* did not negate the potential countervailing applicability of R.C. 2744.03(A)(6)'s exceptions to immunity enjoyed by political subdivision employees and potential liability can still be found against individual employees if the evidence establishes a statutory exception under R.C. 2744.03(A)(6).  *Stachura v. Toledo*, 6th Dist. Lucas No. L-12-1068, 2013-Ohio-2365, ¶ 13; *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30,2011-Ohio-5137, ¶ 16, fn. 2.

**Exception to Immunity Pursuant to R.C. 2744.03(A)(6)(c)**

{¶ 38} R.C. 2744.03(A)(6) establishes the framework of analysis for determining whether a political subdivision employee is entitled to immunity.  It provides that an employee of a political subdivision is immune from tort liability, with three exceptions.  The exceptions to immunity per the statute are set forth as follows:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 39} For ease of discussion, we begin our analysis with R.C. 2744.03(A)(6)(c).  Holmes's complaint claims race discrimination, race harassment, and retaliation by appellants in violation of R.C. 4112.02.  The statute prohibits unlawful discriminatory practices.  It states, in part:

It shall be an unlawful discriminatory practice:

For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 40} R.C. 4112.01(A)(2) defines "employer" as "the state, any political subdivision of the state, or a person employing four or more persons within the state, and any agent of the state, political subdivision, or person."

{¶ 41} In a plurality decision in *Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, 17 N.E.3d 554, the Supreme Court of Ohio held that R.C. 4112.01(A)(2) and 4112.02(A) do not impose civil liability on political subdivision employees so as to trigger the immunity exception in R.C. 2744.03(A)(6)(c). Accordingly, Holmes's claim that Harris is not afforded immunity cannot be predicated upon R.C. 2744.03(A)(6)(c).[6]

---

[6] On appeal Holmes argues that Harris can be held liable under a theory of "aiding and abetting" pursuant to R.C. 4112.02(J). R.C. 4112.02(J) makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

While holding that R.C. 4112.01(A)(2) and 4112.02(A) do not remove immunity from a political subdivision employee pursuant to R.C. 2744.06(A)(6)(c), the plurality opinion in *Hauser* stated in dicta that "[a]n individual political-subdivision employee still faces liability under other provisions of R.C. 4112.02 that expressly impose liability, including the aiding-and-abetting provision in R.C. 4112.02(J)." *Hauser* at ¶ 15. To "aid and abet," an individual must "actively participate in, or otherwise facilitate, another's discriminatory act in violation of R.C. 4112.02." *Johnson - Newberry v. Cuyahoga Cty.*,

**Liability Pursuant to R.C. 2744.03(A)(6)(a) and (b)**

{¶ 42} Turning now to R.C. 2744.03(6)(a) and (b), these sections provide that a political subdivision employee such as Harris can be held liable despite the general grant of immunity under R.C. Chapter 2744 if his acts or omissions were "manifestly outside the scope" of his employment (R.C. 2744.03(A)(6)(a)) or "with malicious purpose, in bad faith, or in a wanton or reckless manner." (R.C. 2744.03(A)(6)(b)). Appellants argue that Holmes's complaint failed to sufficiently allege the exceptions to immunity set forth in R.C. 2744.03(A)(6)(a) or (b).

{¶ 43} Regarding the meaning of "manifestly outside of the scope of employment" in R.C. 2744.03(A)(6)(a), the Fifth District has explained as follows:

> In the context of immunity, an employee's wrongful act, even if it is unnecessary, unjustified, excessive, or improper, does not automatically take such act manifestly outside of the scope of employment. *Elliott v. Ohio Department of Rehab. & Corr.* (1994), 92 Ohio App. 3d 772, 775, 637 N.E.2d 106 (1994). It is only where the acts of the governmental employee are motivated by actual malice that their conduct may be outside the scope of their state employment. *James H. v. Dept. of Mental Health & Mental Retardation* (1980), 1 Ohio App. 3d 60, 61, 439 N.E.2d 437. The act must be so divergent that it severs the employer-employee relationship. *Elliott* at 775. Conduct is within the scope of the employment if it is initiated, in part, to further promote the master's business. *Martin* at 92.

---

8th Dist. Cuyahoga No. 107424, 2019-Ohio-3655, ¶ 21. We note Holmes did not allege in the complaint that Harris aided and abetted those who committed the discriminatory, harassing and retaliatory acts against him in violation of R.C. 4112.02(J). Rather, Holmes alleged Harris acted at all relevant times as his supervisor and employer that discriminated, harassed, and retaliated against him. He argued Harris was liable under a theory of aiding and abetting for the first time in his opposition to appellants' motion for judgment on the pleadings.

*Jackson v. McDonald*, 144 Ohio App.3d 301, 306-307, 760 N.E.2d 24 (5th Dist.2001).

{¶ 44} Malicious conduct is conduct "'indulging or exercising malice; harboring ill will or enmity.'" *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991), quoting *Teramano v. Teramano*, Ohio St.2d 117, 118, 216 N.E.2d 375 (1996). "Malice" can also be defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id.* at 453-454, citing *Bush v. Kelleys, Inc.*, 18 Ohio St.2d 89, 247 N.E.2d 745 (1969).

{¶ 45} "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson*, 144 Ohio App.3d at 309, 760 N.E.2d 24. "Wanton" misconduct is "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, syllabus three of the syllabus. "Reckless" conduct is conduct characterized by "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶ 46} Pursuant to the Ohio Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the party is entitled to relief." Civ.R. 8(A)(1). As Civ.R. 8 clearly establishes that Ohio is a notice-

pleading state, "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29. Accordingly, "in reviewing a motion for judgment on the pleadings, a complainant's failure to allege specific facts to disprove possible affirmative defenses of the defendant should not be fatal to the complaint." *Mangelluzzi v. Morley*, 2015-Ohio-3143, 40 N.E.3d 588, ¶ 13 (8th Dist.). While the Supreme Court of Ohio has required the plaintiff to plead operative facts with particularity in certain type of cases, *id.*, none of the exceptions pertain to political subdivision immunity. *See also Carswell v. Akron*, 9th Dist. Summit No. 29321, 2019-Ohio-4444, ¶ 13-14 (there is no heightened pleading requirement that would require the plaintiff to allege specific exceptions to immunity when bringing suit against a political subdivision and such a plaintiff is under no obligation to prove his case in the initial pleadings and need not affirmatively dispose of the immunity question altogether at the pleading stage).

{¶ 47} The question we are to resolve in this appeal is not whether Holmes could ultimately prove his claim that Harris is not immune because his actions or missions were "manifestly outside the scope" of his employment or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Rather, the question is whether, construing all material allegations and all reasonable inferences in favor of Holmes, he could prove no set of facts that would allow him to prove his claim regarding Harris's immunity. Having reviewed the complaint, we agree with the trial court that the merit of Holmes's claim regarding Harris's immunity cannot be

resolved in Harris's favor at the pleading stage. Although Holmes will ultimately have to meet the high threshold regarding malice, bad faith, wanton, and recklessness regarding Harris's immunity, his pleading was sufficient to survive a motion for judgment on the pleadings. The trial court appropriately denied appellants' motion for judgment on the pleadings on grounds of immunity as to Harris. The first assignment of error is without merit.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS (WITH SEPARATE OPINION ATTACHED)


SEAN C. GALLAGHER, P.J., CONCURRING:

{¶ 49} I fully concur with the majority opinion but write to further address the exceptions to immunity for an employee of a political subdivision set forth under R.C. 2744.03(A)(6).

{¶ 50} R.C. 2744.03(A)(6) is applicable to determining whether an employee of a political subdivision is immune from liability. *A.J.R. v. Lute*, Slip Opinion No. 2020-Ohio-5168, ¶ 12. Generally, an employee of a political subdivision is entitled to immunity under R.C. 2744.03(A)(6) unless one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶ 51} In the complaint, Holmes set forth factual allegations in support of his claims against Cuyahoga Community College and Clayton Harris for reverse-race discrimination, harassment, and retaliation. There is no basis upon which to find R.C. 2744.03(A)(6)(c) applies. However, Holmes averred that the defendants engaged in the alleged discriminatory, harassing, and retaliatory conduct "recklessly, maliciously, and intentionally."

{¶ 52} Civ.R. 9(B) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Further, the majority correctly states that Civ.R. 8(A) requires only a "short and plain statement of the claim" and a demand for judgment.

{¶ 53} An employee of a political subdivision "may be held individually liable for their intentional torts upon a showing of malice or wanton or reckless behavior,

or if the employees' actions were manifestly outside the scope of the employees' employment or official responsibilities." *DiGiorgio v. Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 37, citing R.C. 2744.03(A)(6)(a) and (b). Construing the material allegations in the complaint as true and drawing all reasonable inferences therefrom in favor of Harris, there may be a set of facts that could show Harris is not entitled to immunity pursuant to R.C. 2744.03(A)(6)(a) or (b) and would entitle Holmes to recover from Harris individually.[7]  Therefore, the trial court did not err in failing to grant the motion for judgment on the pleadings. *See Doe v. Licate*, 11th Dist. Ashtabula Nos. 2018-A-0019 and 2018-A-0020, 2019-Ohio-412, ¶ 52-54.  Accordingly, I concur with the majority decision.

---

[7] Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions for the jury when there is evidence demonstrating that the political subdivision employee acted in such a manner. *Spitulski v. Bd. of Edn. of the Toledo City School Dist.*, 2017-Ohio-2692, 90 N.E.3d 287, ¶ 33 (6th Dist.).