[Cite as *Squire v. Carlisle Twp.*, 2019-Ohio-3984.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                    )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

MARTIN SQUIRE, et al.          C.A. No.     18CA011435

    Appellants

    v.                     APPEAL FROM JUDGMENT
                            ENTERED IN THE
CARLISLE TOWNSHIP         COURT OF COMMON PLEAS
                            COUNTY OF LORAIN, OHIO
    Appellee               CASE No.    17CV193439

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

SCHAFER, Judge.

{¶1} Plaintiff-Appellants, Martin Squire and Arlene Squire appeal the judgment of the Lorain County Court of Common Pleas granting summary judgment to Defendant-Appellee, Carlisle Township.

I.

{¶2} Mr. Squire was a longtime employee of Carlisle Township's road department. Mr. Squire began his employment as a road worker class I. He was subsequently promoted to road worker II and then road worker III. In early 2016, upon recommendation of the retiring road superintendent, the Carlisle Township trustees promoted Mr. Squire to acting road superintendent. After working as the acting road superintendent for just over a year, Mr. Squire requested that the trustees return him to his prior road worker class III position. At that time there were no open positions in the road department. Consequently, the trustees voted about a month later to terminate Mr. Squire's employment.

{¶3} The Squires subsequently filed a complaint against Carlisle Township asserting causes of action for age discrimination, promissory estoppel/breach of implied contract, retaliation, wrongful termination in violation of public policy, and loss of consortium. Carlisle Township answered the complaint and that matter proceeded through the pretrial process

{¶4} Carlisle Township ultimately filed a motion for summary judgment alleging it was entitled to judgment on all of the Squires' claims. The Squires responded arguing that there were genuine issues of material fact remaining as to all of their claims. The trial court thereafter granted Carlisle Township's motion for summary judgment, determining that (1) Mr. Squire failed to establish a prima facie claim of age discrimination; (2) a claim for promissory estoppel cannot be asserted against a political subdivision, and that Mr. Squire had failed to submit any evidence of promises made to him that would suggest he could return to his former position with the road department; (3) Mr. Squire failed to set forth any evidence demonstrating that he was discharged in violation of public policy or in retaliation; and (4) as Mrs. Squire's loss of consortium claim was dependent on Mr. Squire's claims, and since the court found that Carlisle Township was entitled to summary judgment on all of Mr. Squire's claims, it was also entitled to summary judgment on Mrs. Squire's claim.

{¶5} The Squires filed this timely appeal, raising one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred by granting Carlisle Township's motion for summary judgment.**

{¶6} In their sole assignment of error, the Squires contend that the trial court erred when it granted Carlisle Township's motion for summary judgment as to their claims for

promissory estoppel, breach of implied contract, wrongful termination, and loss of consortium. Mr. Squire does not contend that the trial court erred when it granted Carlisle Township's motion for summary judgment as to his claim for age discrimination.

{¶7} Under Civ.R. 56(C), summary judgment is appropriate when:

(1)[no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). "Before making such a contrary finding, however, a court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party." *Stepp v. Medina City School Dist. Bd. of Edn.*, 9th Dist. Medina Nos. 15CA0071-M, 15CA0073-M, 2016-Ohio-5875, ¶ 22. "A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor." *Kelvon Properties, Ltd. v. Medina Automotive, L.L.C.*, 9th Dist. Medina No. 18CA0062-M, 2019-Ohio-584, ¶ 4, citing *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293.

## A. Promissory Estoppel

{¶8} The doctrine of promissory estoppel is equitable in nature and provides a remedy through the enforcement of a gratuitous promise. *Hortman v. Miamisburg*, 110 Ohio St.3d 194,

2006-Ohio-4251, ¶ 24. The Supreme Court of Ohio has expressly held that "[t]he doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." *Hortman*, at syllabus.

{¶9}  In its motion for summary judgment, Carlisle Township alleges Mr. Squire's promissory estoppel claim cannot be maintained against it because it was engaged in a governmental function—the operation of a road department. In support of its argument that the operation of a road department and the employment decisions made in exercise of that operation are a governmental function, Carlisle Township points to R.C. 2744.01(C)(2)(e). That statute defines the maintenance and repairs of roads, highways, streets, avenues, alleys, and bridges as a governmental function for the purposes of Ohio's political subdivision tort liability act. *See* R.C. 2744.01, et seq. In their response and on appeal, however, the Squires argue that this definition is inapplicable to Mr. Squire's claim because Ohio's political subdivision tort liability statute specifically excludes civil actions by an employee against his political subdivision relative to any matter that arises out of the employment relationship, *see* R.C. 2744.09(B), and civil actions by an employee of a political subdivision relative to wages, hours, conditions, or other terms of employment, *see* R.C. 2744.09(C).

{¶10} While we agree that the political subdivision tort liability statute is only applicable in the context of a tort claim asserted against a political subdivision, Ohio courts—including this District—regularly look to the statute to determine what acts are "governmental functions" in the context of a promissory estoppel claim. *See e.g. Meeker v. Akron Health Dept.*, 9th Dist. Summit No. 24539, 2009-Ohio-3560, ¶ 7 (citing R.C. 2744.01(C)(2)(l) and (G)(2)(d) defining governmental and proprietary functions for sewer systems under the Political Subdivision Tort Liability Act); *Kenney v. City of Cleveland*, 8th Dist. Cuyahoga No. 105664,

2018-Ohio-1186, ¶ 13 (citing R.C. 2744.01(G)(2)(c) to demonstrate that the operation of a utility is not a governmental function, but rather a proprietary function); *Porter v. Probst*, 7th Dist. Belmont No. 13 BE 36, 2014-Ohio-3789, ¶ 31-32 (citing R.C. 2744.01(C)(2)(h) to demonstrate that the operation of a jail constitutes a government function); *Inwood Village, Ltd. v. Cincinnati*, 1st Dist. Hamilton No. C-110117, 2011-Ohio-6632, ¶ 16-19 (citing R.C. 2744.01(C)(2)(q) to demonstrate that an urban renewal project was a governmental function); *Cosby v. Franklin Cty. Dept. of Job and Family Servs.*, 10th Dist. Franklin No. 07AP-41, 2007-Ohio-6641, ¶ 30 (citing R.C. 2744.01(C)(2)(m) to demonstrate that the operation of a job and family services department is a governmental function). Accordingly, we conclude that although the political subdivision tort liability statute is not relevant in determining whether Carlisle Township is immune from the promissory estoppel claim, it is relevant in determining whether Carlisle Township was performing a governmental function. *See U.S. Bank National Association v. City of Cincinnati*, 1st Dist. Hamilton Nos. C-170526, C-170536, C-180093, 2019-Ohio-1866, ¶ 11; *Kenney* at ¶ 11-13.

{¶11} As stated above, R.C. 2744.01(C)(2)(e) expressly defines the maintenance and repairs of roads, highways, streets, avenues, alleys, and bridges as governmental functions. Moreover, the act of hiring, supervising, and retaining personnel to perform such maintenance and repairs cannot be considered apart from that governmental function. *See Burchard v. Ashland County Board of Developmental Disabilities*, 5th Dist. Ashland No. 17-COA-041, 2018-Ohio-4408, ¶ 31 (compiling cases).

{¶12} Therefore, we conclude that the trial court did not err when it granted Carlisle Township summary judgment as to Mr. Squire's promissory estoppel claim.

**B. Discharge in violation of public policy & Retaliation**

{¶13} In their merit brief, the Squires contend that the trial court erred when it determined that Mr. Squire had failed to set forth any evidence demonstrating that he was discharged in retaliation because Mr. Squire was not terminated until after he requested that he return to his prior position. However, in developing their argument, the Squires rely entirely on the their argument made in support of their claim that the trial court erred when it determined Mr. Squire had failed to set forth any evidence demonstrating that he had been discharged in violation of public policy because it failed to recognize the public policy demonstrated by O.A.C. 123:1-23-03. Accordingly, we will consider these arguments together.

{¶14} It is undisputed that Mr. Squire was an at-will employee. Generally, the termination of an at-will employee's relationship with an employer does not give rise to an action for damages. *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 11. "However, if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Id.*

{¶15} In order to maintain a claim for wrongful discharge in violation of public policy a plaintiff must show:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

(Emphasis sic.) (Internal quotations marks and citations omitted.) *Dohme* at ¶ 12-16. To satisfy the clarity element, "a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Id.* at syllabus. Whether the clarity element has been met is a question of law to be determined by the court. *Collins v. Rizkana*, 73 Ohio St.3d 65, 70 (1995).

{¶16} In his complaint, Mr. Squire alleged he was discharged in violation of the public policy set forth in O.A.C. 123:1-23-03(D). That regulation states:

> Intra-agency promotion. If an employee accepts an intra-agency promotion and is found to be unsatisfactory in the advanced position, the employee shall be demoted to the position from which the employee was promoted or to a similar position. Upon such demotion, the employee's salary shall be the same that the employee was receiving prior to promotion, except for changes in pay range that may have occurred or any step increase to which the employee would have been entitled in the lower classification.

> If an employee takes a civil service examination for a classification having a higher base pay range than the employee holds at the time of the examination and is appointed from the resulting eligible list to a position in the same agency, this action shall be considered a promotion so far as the probationary period is concerned, and the employee shall be demoted in accordance with this rule if the employee's services are found unsatisfactory.

{¶17} This regulation is contained within Administrative Code Section 123, which is promulgated by the Director of Ohio's Department of Administrative Services. In addition to other powers enumerated by law, relevant to this matter, the power and duties of the director of administrate services include oversight of the classified service of the state. *See* R.C. 124.04. The "classified service" is "the competitive classified civil service of the state, the several counties, cities, city health districts, general health districts, and city school districts of the state,

and civil service townships." R.C. 124.01(C). A township is not considered a "civil service township" unless it has a population of 10,000 or more, has a police or fire department of ten or more full-time paid employees, and a civil service commission established under R.C. 124.40(B).

{¶18} In its motion for summary judgment, Carlisle Township points out that this regulation is not applicable to Carlisle Township or the employment positions previously held by Mr. Squire since it is not a civil service township—a fact the Squires concede in their brief in opposition to the motion for summary judgment. *See* R.C. 124.01(C); R.C. 124.11(B). Accordingly, we conclude that Carlisle Township met its initial *Dresher* burden to demonstrate the absence of a genuine issue of material fact concerning the clarity element of Mr. Squire's claim for wrongful termination in violation of a public policy. *See Dresher*, 75 Ohio St.3d at 292.

{¶19} Although the Squires acknowledge that O.A.C. 123:1-23-03(D) itself is not applicable to Carlisle Township, they contend that it demonstrates a public policy with respect to the promotion of *all* government employees. However, the Squires do not provide, and we are unable to find, any legal authority to offer the slightest support for this contention. Moreover, even assuming this regulation demonstrates a public policy with regard to the promotion of employees within the classified civil service, to suggest such a policy should or does include all government employees ignores that the law specifically distinguishes between classified and unclassified civil service, *see* R.C. 124.11, and excludes certain government employee relationships from civil service entirely, *see* R.C. 124.01(A); R.C. R.C. 124.40(B).

{¶20} Therefore, we conclude that the Squires did not meet their reciprocal *Dresher* burden to set forth specific facts showing a genuine issue with regard to the clarity element. *See Dresher*, 75 Ohio St.3d at 293.

## C. Implied Contract

{¶21} On appeal the Squires contend that the trial court erred when it found that they had failed to present any evidence of promises made to Mr. Squire regarding his employment and thereafter granted summary judgment to Carlisle Township on Mr. Squire's implied contract claim.

{¶22} An "exception to the employment at-will doctrine is an express or implied contract altering the terms for discharge." *Shetterly v. WHR Health Sys.*, 9th Dist. Medina No. 08CA0026-M, 2009-Ohio-673, ¶ 12. To prove the existence of an implied contract, a plaintiff "bears the heavy burden of demonstrating (1) assurances on the part of the employer that satisfactory work performance was connected to job security; (2) a subjective belief on the part of the employee that he could expect continued employment; and (3) indications that the employer shared the expectation of continued employment." *Craddock v. Flood Co.*, 9th Dist. Summit No. 23882, 2008-Ohio-112, ¶ 7. Thus, "specific representations leading to an expectation of continued employment are essential." *Id.* at ¶ 8, citing *Wing v. Anchor Media, Ltd of Texas*, 59 Ohio St.3d 108 (1991), paragraph two of the syllabus; *Moss v. Electroalloys Corp.*, 9th Dist. Lorain No. 02CA008111, 2003-Ohio-831, ¶ 12. "General expressions of optimism or good will are not enough." *Id.* at ¶ 8.

{¶23} In its motion for summary judgment, Carlisle Township argued that Mr. Squire could not maintain a claim for implied contract because no evidence was presented to suggest any verbal agreement between the parties and "Mr. Squire admitted as much." In support of

their motion, Carlisle Township pointed to the following exchange on cross-examination during Mr. Squire's deposition testimony:

> Q. Do you recall any verbal agreement when you were put into the position of Acting Superintendent?
>
> A. No.

**{¶24}** In their brief in opposition, the Squires did not point to any evidence of an agreement, stating only that "[i]t was [Mr. Squire]'s understanding that, since he was the *Acting* Road Superintendent and not hired as the Road Superintendent, along with the fact that this position was communicated as a trial position, he could return to his prior position." The nature of the "trial position" and Mr. Squire's "understanding," however, are not the equivalent of a specific representation by Carlisle Township of continued employment if Mr. Squire's "trial position" as acting road superintendent did not work out.

**{¶25}** Although the Squires did not point to any specific representations in their brief in opposition to summary judgment, they argue in their merit brief on appeal that Mr. Squire's affidavit attached to his brief in opposition "provides direct evidence of a verbal agreement" between Mr. Squire and Carlisle Township. Nonetheless, the Squires do not identify the alleged "direct evidence" and a thorough review of that affidavit belies this contention. The only references in Mr. Squire's affidavit related to any representations made to him are in lines 23 and 24. In line 23, Mr. Squire avers "I was told by the Trustees that I was the *Acting* Road Superintendent because I could try out the position." Mr. Squire then avers in line 24: "I was not told what would happen if I wanted to return to my prior position from Acting Road Superintendent." Thus, Mr. Squire does not point to any specific representations he received that would suggest he could return to his prior position if he did not wish to continue in the road superintendent position.

{¶26} Therefore, we determine that there was no genuine issue of material fact that specific representations were made to Mr. Squire by Carlisle Township. Accordingly, the trial court did not err when it granted summary judgment to Carlisle Township on Mr. Squire's implied contract claim.

**D. Loss of Consortium**

{¶27} In this case, the trial court also granted summary judgment to Carlisle Township on Mrs. Squire's loss of consortium claim because it had concluded that Carlisle Township was entitled to summary judgment on all of Mr. Squire's claims. On appeal, the Squires argue that the trial court erred in dismissing Mrs. Carlisle's claim because Mr. Squire's claims "should proceed." However, because we have determined that summary judgment in favor of Carlisle Township was proper on all of Mr. Squire's claims, we further conclude that the trial court properly granted summary judgment in favor of Carlisle Township on Mrs. Squire's derivative loss of consortium claim. *See Kronjak v. New Plaza Management, LLC*, 9th Dist. Summit No. 28302, 2017-Ohio-1184, ¶ 17.

**E. Conclusion**

{¶28} Based on the foregoing, the Squires' sole assignment of error is overruled.

III.

{¶29} The Squires' assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶30} To the extent the majority concludes that the trial court did not err in granting summary judgment to Carlisle Township on Mr. Squire's promissory estoppel claim, I respectfully dissent.

{¶31} It is true that the Ohio Supreme Court held in *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, syllabus, that "[t]he doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." However, *Hortman* was a straightforward case involving a simple

application of the rule set forth above. It involved property owners who sued Miamisburg for damages caused to their property during a road-improvement project. *See id.* at ¶ 2. Despite this, other appellate courts, and now this Court, have extended the reach of *Hortman* to include promissory estoppel claims involving the hiring, supervision, or termination of employees working for a political subdivision for a department that performs a governmental function. *See, e.g., Porter v. Probst,* 7th Dist. Belmont No. 13 BE 36, 2014-Ohio-3789, ¶ 32. The reasoning appears to be that, because the department performs a governmental function, the act of hiring, supervising, or terminating the employees in that department must also be a governmental function. *See id.* As there is nothing within the text of *Hortman* that suggests it should be extended to include the foregoing circumstances, I respectfully dissent.

APPEARANCES:

JOHN J. GILL, Attorney at Law, for Appellants.

FRANK H. SCIALDONE, Attorney at Law, for Appellee.