[Cite as *Evans v. Shawnee Twp. Bd. of Trustees*, 2021-Ohio-1003.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

MARK EVANS,

      PLAINTIFF-APPELLANT,             CASE NO.  1-20-25

      v.

SHAWNEE TOWNSHIP BOARD
OF TRUSTEES, ET AL.,             O P I N I O N

      DEFENDANT-APPELLEE.

---

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2019 0269

Judgment Affirmed

Date of Decision:   March 29, 2021

---

APPEARANCES:

    *William J. O'Malley* for Appellant

    *Alex J. Hale* for Appellee

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, Mark Evans ("Evans"), appeals the July 18, 2020 judgment of the Allen County Court of Common Pleas granting summary judgment in favor of defendants-appellees, the Shawnee Township Board of Trustees ("Shawnee Township"), Chris Seddelmeyer, Trustee ("Seddelmeyer"), David Belton, Trustee ("Belton"), and Clark Spieles, Trustee ("Spieles") (collectively, "defendants"), and dismissing Evans's complaint. For the reasons that follow, we affirm.

{¶2} On July 8, 2019, Evans filed a breach-of-contract and a wrongful-discharge-in-violation-of-public-policy complaint seeking damages from the defendants following the termination of his employment as a firefighter and paramedic with Shawnee Township. (Doc. No. 1). On August 7, 2019, the defendants filed their answer. (Doc. No. 7). After being granted leave, the defendants filed an amended answer on November 12, 2019. (Doc. Nos. 11, 12, 13).

{¶3} On May 1, 2020, the defendants filed a motion for summary judgment. (Doc. No. 20). Evans filed a memorandum in opposition to the defendants' motion for summary judgment on May 21, 2020. (Doc. No. 24). The defendants filed their response to Evans's memorandum in opposition to their motion for summary judgment on June 5, 2020. (Doc. No. 27). On June 18, 2020, the trial court granted

summary judgment in favor of the defendants and dismissed Evans's complaint. (Doc. No. 28).

{¶4} On June 29, 2020, Evans filed a notice of appeal. (Doc. No. 30). He raises three assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court erred when it granted Summary Judgment to Defendants on Plaintiff's claim or [sic] breach of contract.**

**Assignment of Error No. II**

**The Trial Court erred when it granted Summary Judgment to Defendants on Plaintiff's claim for employment termination in violation of public policy.**

**Assignment of Error No. III**

**The Trial Court erred when it determined that the individual Trustees had immunity under ORC §2744.03(A)(6).**

{¶5} In his assignments of error, Evans argues that the trial court erred by granting summary judgment in favor of the defendants. In particular, Evans argues in his first assignment of error that there is a genuine issue of material fact that the defendants breached his implied contract for employment by terminating his employment as a firefighter and paramedic with Shawnee Township without providing him three years to pass the National Registry of Emergency Medical Technicians exam. Likewise, in his second assignment of error, Evans argues that there is a genuine issue of material fact that his employment was terminated in

contravention of public policy. Finally, in his third assignment of error, Evans argues that the trial court erred by concluding that Seddelmeyer, Belton, and Spieles are entitled to statutory immunity under R.C. 2744.13(A)(6).

*Standard of Review*

{¶6} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶7} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292.

"The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶8} On appeal, Evans contends that the trial court erred by granting summary judgment in favor of the defendants as to his breach-of-contract and wrongful-discharge claims. We will begin by addressing Evans's breach-of-contract claim. Evans argues that there is a genuine issue of material fact that he had a property interest in his employment as a firefighter and paramedic with Shawnee Township based on "a job posting," "job description," a verbal assertion by the fire chief, and "a union contract." (Appellant's Brief at 12-13). Taken together, Evans asserts that these created an "implied-in-fact contract" governing his employment, which provided specific employment promises that were not followed by Shawnee Township. As a result, Evans contends that he had a property interest in his employment and that he could not be terminated for failing the National Registry of Emergency Medical Technicians exam within the first three years of employment. We disagree.

{¶9} "'A public officer or public general employee holds his position neither by grant nor contract, nor has any such officer or employee a vested interest or private right of property in his office or employment.'" *Mayer v. Ohio Dept. of*

*Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-380, 2012-Ohio-948, ¶ 18, quoting *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499 (1948), paragraph one of the syllabus. *See also Nealon v. Cleveland*, 140 Ohio App.3d 101, 106-107 (8th Dist.2000) ("It is evident that a city employee, such as an assistant director of law, holds his position as a matter of law, not by contract."). Importantly, "[p]ublic employees in Ohio differ from private employees in that they cannot have any contractual relationship with their employer; the relationship between a governmental employer an[d] employee is governed exclusively by statute or legislative enactment." *Cobb v. Oakwood*, 789 F.Supp. 237, 240 (N.D.Ohio 1991). "It has been called a 'universal rule' that a public employee does not hold his office ex contractu (that is, pursuant to contract in the sense of an agreement or bargain between him and the public), but ex lege (as a matter of law, or pursuant to statute)." *Mayer* at ¶ 18, citing *Fuldauer v. Cleveland*, 32 Ohio St.2d 114, 122 (1972), *Gordon* at 508, and *Jackson v. Kurtz*, 65 Ohio App.2d 152, 154 (1st Dist.1979).

{¶10} Indeed, "townships are creatures of statute and have no inherent power." *Am. Sand & Gravel, Inc. v. Fuller*, 5th Dist. Stark No. CA-6952, 1987 WL 8237, *1 (Mar. 16, 1987). As relevant here, "R.C. 505.38 provides for the appointment and removal of fire chiefs and firefighters in townships and fire districts with a fire department." *Fulmer v. W. Licking Joint Fire Dist.*, 5th Dist. Licking No. 13-CA-36, 2014-Ohio-82, ¶ 12. Specifically, R.C. 505.38 permits

"township boards of trustees the power to employ 'such fire firefighters as it considers best.'" *McKendry v. Union Twp., Butler Cty.*, Ohio, 633 F.Supp. 188, 190 (S.D.Ohio 1986), quoting R.C. 505.38(A). Under the statute, "'[s]uch *appointees* shall continue in office until removed therefrom" as provided by sections 733.35 to 733.39 of the Revised Code.'" (Emphasis added.) *Id.*, quoting R.C. 505.38(A). Although R.C. 505.38 "makes no mention of probationary employees," the statute has been determined to be "broad enough to accommodate the imposition of probationary status as a condition of appointment to full-time employment" since "[s]uccessful completion of a probationary period is almost a universal condition of government employment and promotion." *Id.* at 190. "The purpose of this probationary period is to evaluate a career employee's merit and fitness in areas that a competitive examination cannot test." *Id.*, citing *Walton v. Montgomery Cty. Welfare Dept.*, 69 Ohio St.2d 58, 59 (1982).

{¶11} Notwithstanding that fire chiefs and firefighters in townships and fire districts with a fire department appointed under R.C. 505.38 are *not* subject to Ohio's civil service statute, an examination of the law applicable to Ohio's civil service is instructive here. Importantly, "[e]ven though permanent civil service employees are granted substantial rights by the Revised Code, R.C. 124.27 makes clear that probationary employees do *not* have an entitlement to continued employment, and thus they are not afforded the due process rights given to

permanent employees." (Emphasis added.) *Fields v. Ariss*, 12th Dist. Warren No. CA2000-04-035, 2000 WL 1221895, *6 (Aug. 28, 2000), citing *State ex rel. Canfield v. Frost*, 53 Ohio St.3d 13, 13-15 (1990), *Taylor v. Middletown*, 58 Ohio App.3d 88, 91 (12th Dist.1989), and *Clark v. Ohio Dept. of Transp.*, 89 Ohio App.3d 96, 99 (12th Dist.1993). Specifically, "[u]nder Ohio law, probationary employees have no entitlement to any particular discharge procedure, nor do they have a protected property interest in their employment." *Dalton-Webb v. Village of Wakeman*, N.D.Ohio No. 3:19 CV 630, 2020 WL 4926233, *5 (Aug. 21, 2020), citing *Walton* at 65 and *Curby v. Archon*, 216 F.3d 549, 553-554 (6th Cir.2000). *See also McKendry* at 190 ("Probationary employees commonly have no property right to be accorded due process protection."), citing *Orr v. Trinter*, 444 F.2d 128, 134-135 (6th Cir.1971) and *Walton* at 65.

{¶12} Furthermore, R.C. Chapter 4117 governs public employees' collective bargaining agreements. "R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and the bargaining unit 'governs the wages, hours, and terms and conditions of public employment covered by the agreement.'" *Oglesby v. City of Columbus*, 10th Dist. Franklin No. 00AP-544, 2001 WL 102257, *4 (Feb. 8, 2001), quoting R.C. 4117.10(A). "Where a collective bargaining agreement contains a grievance procedure, but also provides that probationary employees may be terminated at any time with no right to appeal their termination,

the terms of the collective bargaining agreement govern the employment relationship." *Ariss* at *6, citing *Fields v. Summit Cty. Executive Branch*, 83 Ohio App.3d 68, 72-73 (9th Dist.1992).

{¶13} Here, Evans's public employment as a firefighter and paramedic with Shawnee Township was governed by R.C. 505.38 and the provisions of a collective bargaining agreement. Specifically, the collective bargaining agreement in place between Shawnee Township and the bargaining unit—The International Association of Local Firefighters Local #2550—reflects, in its relevant part, that "[e]ach new employee upon entering a bargaining unit position covered by th[e] Agreement shall serve an initial probationary period of one (1) year." (Doc. No. 13, Ex. A). In other words, firefighters employed by Shawnee Township do not become *appointees* under R.C. 505.38—that is, enjoy a protected-property interest in their employment—until the completion of the one-year probationary period. Because probationary employees do not enjoy a protected-property interest in their employment until the completion of this probationary period, the collective bargaining agreement further provides that "[e]mployees serving their initial probationary period may be terminated anytime during the probationary period and shall have no appeal rights regarding such removal." (*Id.*).

{¶14} There is no dispute that Evans did not complete his one-year probationary period, and, as such, that Evans did not enjoy a protected-property

interest in his employment as a firefighter and paramedic with Shawnee Township. *See McKendry*, 633 F.Supp. at 190; *Dalton-Webb*, 2020 WL 4926233, at *6. *See also Bernhard v. Perrysburg Twp.*, 185 Ohio App.3d 470, 2009-Ohio-6345, ¶ 24-26 (6th Dist.). Because Evans did not enjoy a protected property interest in his employment, as a matter of law, he cannot challenge his discharge. *See Dalton-Webb* at *6. *See also McKendry* at 190 (Without a valid claim for the deprivation for the constitutional right plaintiff cannot succeed [on his claim] as a matter of law.").

{¶15} Nevertheless, Evans contends that statements in a job posting, in a job description, made by the fire chief, and in the collective bargaining agreement created a property interest in his employment. That is, Evans contends that the job posting, job description, statements by the fire chief, and the collective bargaining agreement created an implied-in-fact contract which modified his at-will employment. We disagree.

{¶16} "An 'exception to the employment at-will doctrine is an express or implied contract altering the terms for discharge.'" *Squire v. Carlisle Twp.*, 9th Dist. Lorain No. 18CA011435, 2019-Ohio-3984, ¶ 22, quoting *Shetterly v. WHR Health Sys.*, 9th Dist. Medina No. 08CA0026-M, 2009-Ohio-673, ¶ 12. "[E]vidence of the character of the employment, custom, the course of dealing between the parties, company policy, or other circumstances may transform an employment at-

will agreement into an implied contract for a definite term." *Ventre v. Bd. of Trustees of Green Twp.*, 1st Dist. Hamilton No. C-970666, 1998 WL 654096, *9 (Sept. 25, 1998), citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100 (1985), paragraph two of the syllabus. *See also Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, ¶ 56 (10th Dist.) ("An implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement.").

{¶17} "To prove the existence of an implied contract, a plaintiff 'bears the heavy burden of demonstrating (1) assurances on the part of the employer that satisfactory work performance was connected to job security; (2) a subjective belief on the part of the employee that he could expect continued employment; and (3) indications that the employer shared the expectation of continued employment.'" *Squire* at ¶ 22, quoting *Craddock v. Flood Co.*, 9th Dist. Summit No. 23882, 2008-Ohio-112, ¶ 7. *See also Wissler v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 09AP-569, 2010-Ohio-3432, ¶ 31 ("In order to determine whether an implied-in-fact contract exists, '"[t]he conduct and declarations of the party must be examined to determine the existence of an intent to be bound."'"), quoting *Fouty* at ¶ 57, quoting *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App.3d 844, 850 (7th Dist.1999). "Thus, 'specific representations leading to an expectation of

continued employment are essential.'" *Squire* at ¶ 22, quoting *Craddock* at ¶ 8, citing *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991), paragraph two of the syllabus, and citing *Moss v. Electroalloys Corp.*, 9th Dist. Lorain No. 02CA008111, 2003-Ohio-831, ¶ 12. "'General expressions of optimism or good will are not enough.'" *Id.*, quoting *Craddock* at ¶ 8.

**{¶18}** However, "[u]nder Ohio law, a political subdivision cannot be bound by a contract 'unless the agreement is in writing and formally ratified through proper channels.'" *Patterson v. Licking Twp.*, 5th Dist. Licking No. 17-CA-3, 2017-Ohio-5803, ¶ 18, quoting *Schmitt v. Educational Serv. Ctr. Of Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 97605, 2012-Ohio-2208, ¶ 18. *See also Musial Offices, Ltd. v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 108478, 2020-Ohio-5426, ¶ 33 ("The policy precluding ex contractu claims against governmental entities is based on the principle that a 'municipality cannot enter into a contract * * * except by ordinance or resolution of its counsel.'"), quoting *Wellston v. Morgan*, 65 Ohio St. 219, 227 (1901), and citing *Cooney v. Independence*, 8th Dist. Cuyahoga No. 66509, 1994 WL 663453, *2 (Nov. 23, 1994). "Consequently, a political subdivision cannot be liable based on theories of implied or quasi contract." *Patterson* at ¶ 18, citing *Schmitt* at ¶ 18. *See also Musial Offices* at ¶ 33; *Bd. of Rootstown Twp. Trustees v. Rootstown Water Serv. Co.*, 11th Dist. Portage No. 2011-P-0084, 2012-Ohio-3888, ¶ 49 (noting that a municipality or county cannot be liable on an implied contract).

{¶19} "R.C. 2744.01(F) defines a political subdivision as including a township." *Patterson* at ¶ 19. Accordingly, as a political subdivision, Shawnee Township cannot be liable on a theory of an implied or quasi contract. *See id.*; *Bd. of Rootstown Twp. Trustees* at ¶ 49. Evans's contract claim is based only on an implied-contract theory. (*See, e.g.*, Appellant's Brief at 12). That is, Evans did not present any evidence reflecting that Shawnee Township entered an express contract with him. Therefore, even when viewing the evidence in favor of Evans, the trial court did not err by granting summary judgment in favor of the defendants as to Evans's breach-of-contract claim.

{¶20} Having resolved Evans's breach-of-contract claim, we will turn to his wrongful-discharge claim. "In general, an employer can 'terminate the employment of any at-will employee for any cause, at any time whatsoever, even if the termination was done in gross or reckless disregard of the employee's rights.'" *McCulloch v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 14AP-357, 2014-Ohio-4946, ¶ 18, quoiting *Moore v. Impact Community Action*, 10th Dist. Franklin No. 12AP-1030, 2013-Ohio-3215, ¶ 7, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995) and *Phung v. Waste Mgt., Inc.*, 23 Ohio St.3d 100, 102 (1986). "However, the Supreme Court of Ohio recognized this right to terminate employment for any cause no longer includes the discharge of an employee where the discharge is in violation of a statute and therefore contravenes public policy." *Id.*, citing *Greeley*

*v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990), paragraphs

one and two of the syllabus. "If an employer does so, the discharged employee may

bring a cause of action in tort against the employer." *Id.*, citing *Greeley* at paragraph

three of the syllabus.

{¶21} To assert a claim for wrongful discharge in violation of public policy,

a plaintiff must establish:

> (1) that a clear public policy existed and was manifested either in a
> state or federal constitution, statute or administrative regulation or in
> the common law ("the clarity element"), (2) that dismissing
> employees under circumstances like those involved in the plaintiff's
> dismissal would jeopardize the public policy ("the jeopardy
> element"), (3) that the plaintiff's dismissal was motivated by conduct
> related to the public policy ("the causation element"), and (4) that the
> employer lacked an overriding legitimate business justification for the
> dismissal ("the overriding-justification element").

*Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, ¶

12. "The clarity and jeopardy elements involve legal questions that the court

determines." *Id.* "The causation and overriding-justification elements involve

factual issues that the finder of fact decides." *Id.*

{¶22} Under the clarity analysis, we must determine whether there exists in

Ohio a public policy against the employment action similar to the one alleged by

Evans. *See Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723,

¶ 11. "'Clear public policy' sufficient to justify an exception to the employment-at-

will doctrine may be expressed by the General Assembly in statutory enactments,

as well as in other sources, such as the Ohio and United States constitutions, administrative rules and regulations, and the common law." *Id.*

{**¶23**} Here, Evans invokes R.C. 2921.42(A)(1)—a criminal statute prohibiting public officials from having an unlawful interest in a public contract—as the basis for his wrongful-discharge claim. R.C. 2921.42 prohibits, in its relevant part, public officials from using their "authority or influence * * * to secure authorization of any public contract in which * * * a member of the public official's family * * * has an interest." R.C. 2921.42(A)(1). Evans contends that R.C. 2921.42(A)(1) expresses a clear public policy against the termination of a township employee's employment in order for a member of a township trustee's family to be hired. Specifically, Evans argues that defendants violated this clear public policy when "Seddelmeyer improperly interfered with his employment in order to have her son hired." (Appellant's Brief at 16).

{**¶24**} We cannot conclude that R.C. 2921.42(A)(1) expresses a clear public policy that provides an exception to the employment-at-will doctrine. Importantly, the General Assembly clearly and unambiguously did not intend for R.C. 2921.42(A)(1) to recognize a wrongful-discharge tort in employment law. Consequently, R.C. 2921.42(A)(1) does not express a clear public policy which would support a wrongful-discharge claim. *See Miracle*, 157 Ohio St.3d 413, 2019-Ohio-3308, at ¶ 24. *See also Squire*, 2019-Ohio-3984, at ¶ 18-20. Thus, because

R.C. 2921.42(A)(1) does not express a clear public policy which would support a wrongful-discharge claim, the trial court did not err by granting summary judgment in favor of the defendants as to Evans's wrongful-discharge claim.

{¶25} Finally, Evans argues that the trial court erred by concluding that Seddelmeyer, Belton, and Spieles are entitled to statutory immunity under R.C. 2744.03(A)(6). On appeal, Evans argues that "there is ample evidence that Trustee Seddelmeyer acted outside the scope of her official responsibilities" and that R.C. 2744.09 "makes clear that the immunity under §2744.03 does not apply to the claims in this case." (Appellant's Brief at 18).

{¶26} "R.C. Chapter 2744 governs political subdivision tort liability and immunity." *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460, ¶ 44 (3d Dist.). "R.C. 2744.02(A)(1) states that political subdivisions are immune from liability '[e]xcept as provided in [R.C. 2744.02](B).'" *Piazza v. Cuyahoga Cty.*, 157 Ohio St.3d 497, 2019-Ohio-2499, ¶ 27, quoting R.C. 2744.02(A)(1). "It does not refer to R.C. 2744.09, which states that R.C. Chapter 2744—including the general grant of immunity in R.C. 2744.02(A)(1)—shall not be construed as applying to the situations listed in R.C. 2744.09." *Id.*

{¶27} Instead, R.C. 2744.09 provides, in relevant part, that "the Political Subdivision Tort Liability Act, R.C. Chapter 2744, does not apply to '[c]ivil actions by an employee * * * against his political subdivision relative to any matter that

arises out of the employment relationship between the employee and the political subdivision.'" *Id.* at ¶ 1, quoting R.C. 2744.09(B). *See Taylor v. E. Cleveland*, N.D.Ohio No. 1:20 CV 02507, 2021 WL 229973, *3 (Jan. 22, 2021) (noting that Chapter 2477 "grants statutory immunity to political subdivisions * * * for 'injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function'" and that "civil actions brought by political subdivision employees which relate to 'any matter that arises out of the employment relationship' are exempt from this immunity"), quoting R.C. 2744.02(A)(1) and 2744.09(B). *See also Piazza* at ¶ 27 (noting that, under that circumstance, courts "do not start with an assumption of immunity, and the policy justification for construing an exception in favor of immunity is absent").

{¶28} However, "the Supreme Court of Ohio has held that R.C. 2744.09(B) only removes the immunity of a political subdivision but does not remove immunity from the employees of political subdivisions." *Holmes v. Cuyahoga Community College*, 8th Dist. Cuyahoga No. 109548, 2021-Ohio-687, ¶ 36, citing *Zumwalde v. Madeira & Indian Hill Joint Fire, Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, ¶ 27 ("In a civil action brought by an employee of a political subdivision against another employee of the political subdivision arising out of the employment relationship, R.C. 2744.09(B) removes immunity only as to the political subdivision and does not

-17-

affect the statutory immunity of the fellow employee."), *Spitulski v. Bd. of Edn. of the Toledo City School Dist.*, 6th Dist. Lucas No. L-16-1225, 2017-Ohio-2692 ¶ 35 (6th Dist.), and *Kravetz v. Streetsboro Bd. of Edn.*, 11th Dist. Portage No. 2011-P-0025, 2012-Ohio-1455, ¶ 32. An "employee" of a political subdivision "includes any elected or appointed official of a political subdivision." R.C. 2744.01(B). Accordingly, Evans's argument that Seddelmeyer, Belton, and Spieles are without statutory immunity under R.C. 2744.09 is without merit—that is, R.C. 2744.09 does not remove immunity from Seddelmeyer, Belton, or Spieles.

{¶29} Nevertheless, "potential liability can still be found against individual employees if the evidence establishes a statutory exception under R.C. 2744.03(A)(6)." *Holmes* at ¶ 37, citing *Stachura v. Toledo*, 6th Dist. Lucas No. L-12-1068, 2013-Ohio-2365, ¶ 13 and *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, ¶ 16, fn. 2. "R.C. 2744.03(A)(6) establishes the framework of analysis for determining whether a political subdivision employee is entitled to immunity." *Id.* at ¶ 38.

> R.C. 2744.03(A)(6) provides a general grant of immunity to an employee of a political subdivision unless one of the following exceptions applies: (1) the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, (2) the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or (3) liability is expressly imposed upon the employee by a section of the Revised Code.

*Plush v. Cincinnati*, 1st Dist. Hamilton No. C-200030, 2020-Ohio-6713, ¶ 34.

{¶30} Based on our resolution of Evans's first and second assignments of error, we conclude that the defendants are entitled to judgment as a matter of law. That is, reasonable minds can reach but one conclusion when viewing the evidence in favor of the defendants, and that conclusion is adverse to Evans. Specifically, there is no genuine issue of material fact that Seddelmeyer, Belton, or Spieles would not be entitled to immunity or that Evans would be able to recover from Seddelmeyer, Belton, or Spieles individually.

{¶31} For these reasons, Evans's assignments of error are overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**